UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIDGET GORDON, MITCHELL
GORDON a/k/a Mitch Gordon,

               **Plaintiffs,**

-vs-                                               **Case No.  6:08-cv-73-Orl-19KRS**

KEVIN BEARY, in his official capacity
as Sheriff of Orange County, Florida,
CITY OF OCOEE, CITY OF WINTER GARDEN,
RONALD WILCOX, in his individual capacity,
DONNA OLPHIE, in her individual capacity,
MIKE HENRY, in his individual capacity,
BRIAN PACE, in his individual capacity, and
BRIAN SATERLEE, in his individual capacity,

               **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.     Motion of Defendant, Ronald Wilcox, to Dismiss Count IV and Count XIV of Plaintiffs' Amended Complaint or, in the Alternative, Motion for a More Definite Statement (Doc. No. 22, filed Feb. 5, 2008);

2.     Motion of Defendant, Kevin Beary, to Dismiss Count I, Count VI, Count XIX, Count XXVII, and Count XXVIII of Plaintiffs' Amended Complaint or, in the Alternative, Motion for a More Definite Statement (Doc. No. 23, filed Feb. 5, 2008);

3.     Amended Motion of Plaintiffs to Remand to State Court (Doc. No. 28, filed Feb. 7, 2008);

4.     Motion of Defendant, City of Winter Garden, to Dismiss Count XXI of Plaintiffs' Amended Complaint and Memorandum of Law (Doc. No. 33, filed Feb. 11, 2008);

5.      Response of Defendants, Kevin Beary and Ronald Wilcox, in Opposition to Plaintiffs'

Amended Motion to Remand to State Court (Doc. No. 34, filed Feb. 13, 2008);

6.      Response/Objection of Defendants, City of Winter Garden, Donna Olphie, and Mike Henry,

to Plaintiffs' Amended Motion to Remand to State Court and Memorandum of Law (Doc.

No. 38, filed Feb. 16, 2008);

7.      Response of Defendants City of Ocoee, Brian Pace, and Brian Saterlee in Opposition to

Plaintiffs' Amended Motion to Remand to State Court (Doc. No. 41, filed Feb. 20, 2008);

8.      Response of Plaintiffs to Defendant Kevin Beary's Motion to Dismiss or, in the Alternative,

for a More Definite Statement (Doc. No. 48, filed Mar. 10, 2008);

9.      Response of Plaintiffs to Defendant Ronald Wilcox's Motion to Dismiss or in the

Alternative, Motion for More Definite Statement (Doc. No. 49, filed Mar. 10, 2008);

10.     Response of Plaintiff Mitch Gordon to Defendant City of Winter Garden's Motion to

Dismiss Count XXI of Plaintiffs' Amended Complaint (Doc. No. 51, filed Mar. 18, 2008);

and

11.     Partially Unopposed Motion for Leave to File Second Amended Complaint and Demand for

Jury Trial (Doc. No. 56, filed May 30, 2008).

### Background

#### I.      Factual Background

Plaintiff Bridget Gordon is a pharmacist who owned and operated a pharmacy located in

Ocoee, Florida. (Doc. No. 1 ¶ 21.) She was arrested in January 2004 following an investigation into

reportedly-illegal sales of hydrocodone, a drug popularly known by the brand name Vicodin. (*Id.*

¶¶ 22-39.) The charges were dismissed in October of 2004. (*Id.* ¶ 35.) Bridget Gordon now brings

this suit against Orange County Sheriff Kevin Beary, in his official capacity, the City of Winter Garden, the City of Ocoee, and five law enforcement officers in their individual capacities, Ronald Wilcox, Donna Olphie, Mike Henry, Brian Pace, and Brian Saterlee, alleging that Defendants are liable for false arrest, defamation, conversion, and violations of her constitutional rights under 42 U.S.C. § 1983 (2006).  Her husband, Plaintiff Mitchell Gordon, asserts claims against the eight above-named Defendants for loss of consortium.[1]

According to the Amended Complaint, Bridget Gordon's arrest followed "an alleged buy from a police informant." (Doc. No. 1 ¶ 22.) Gordon contends that the individual defendants "made material misstatements of fact and omitted various other facts concerning the investigation, both in obtaining the search warrant and during the prosecution."[2] (*Id.* ¶ 23.) Furthermore, the "informant never identified [Gordon] and was coerced by the individual defendants into picking [her], even though the informant had never seen [Gordon] nor knew who she was." (*Id.* ¶ 24.) Gordon also contends that Defendants knew the informant to be unreliable. (*Id.* ¶ 25.)

---

[1] "Gordon" as used in this Order will refer to Bridget Gordon only unless otherwise indicated. "The Gordons" will collectively refer to Bridget and Mitchell Gordon. The term "individual Defendants" will collectively refer to Ronald Wilcox, Donna Olphie, Mike Henry, Brian Pace, and Brian Saterlee. "The City" will refer to the City of Winter Garden unless otherwise indicated. Although Defendants Pace and Saterlee have indicated that their names are incorrectly spelled in the Amended Complaint, the Court will use the names appearing in the Amended Complaint to avoid confusion.

[2] Gordon gives two examples of alleged misstatements. First, she claims that "Defendants Wilcox[] and Saterlee falsely swore out statements stating that they had [Bridget Gordon] on audio tapes illegally selling Hydrocodone, and all made false statements about the transaction, and made false statements about [Gordon] being picked out of a photo lineup." (Doc. No. 2 ¶ 23.) Secondly, she contends that "Wilcox, without determining whether or not [Bridget Gordon] was in fact on the tape, ordered the transcriber of the tape to put [Gordon's] name in the transcript where there was a female voice." (*Id.*)

The Amended Complaint explains that officers Wilcox and Saterlee executed affidavits at some point containing false information about Gordon. Specifically, they swore that a voice recorded during the investigation belonged to Gordon, despite having no familiarity with her voice. (*Id.* ¶ 26.) Based on these affidavits, a magistrate issued a warrant to search Gordon's pharmacy and to seize "Hydrocodone and all controlled substances." (*Id.* ¶ 31.) Armed with the warrant, officers employed by Sheriff Beary, the City of Ocoee, and the City of Winter Garden, including officer Wilcox, searched the premises. (*Id.* ¶ 32.) During the search, the officers exceed the scope of the warrant "and seized almost everything in the store," including unrelated merchandise and personal items and papers belonging to Gordon. (*Id.*) The seized property has still not been returned. (*Id.*) In addition, the "physical interior of the store was destroyed." (*Id.* ¶ 33.)

Following the search, Gordon was arrested and charged with selling a controlled substance in an illegal manner. (*Id.* ¶¶ 27, 34-35.) Gordon contends that the officers were without probable cause to search the premises and arrest her. (*Id.* ¶ 31.) Further, while the charges were pending, Defendants failed to "turn over the tape for a substantial amount of time, which unnecessarily continued the prosecution." (*Id.* ¶ 27.) In addition, Defendants failed to disclose to the prosecuting attorney or Gordon that "on at least three separate occasions, a second informant . . . attempted to purchase Hydrocodone without a prescription from [Gordon], and on all three occasions, the second informant was unsuccessful." (*Id.* ¶ 29.) Defendants also failed to disclose several interviews with witnesses. (*Id.* ¶ 30.)

The charges against Gordon were dismissed on October 6, 2004. (*Id.* ¶ 35.) However, she "suffered damages and costs in defending the prosecution . . . ." (*Id.* ¶ 36.) Moreover, she "was forced out of her business of twelve years and [her] pharmaceutical license was suspended." (*Id.*

¶ 38.)  Even though Gordon received her license back from the pharmacy board, "she has been unable to work due to these incidents."  (*Id.* ¶ 39.)  In addition, Gordon alleges that Sheriff Beary's officers defamed her in communications to the pharmacy board and media.  (*Id.* ¶ 264.)

## II.    Procedural Posture

The Gordons filed a twenty-eight count, sixty-page complaint on January 10, 2008.  (Doc. No. 2.)  Counts I through VIII are brought by Bridget Gordon against all Defendants for false arrest and imprisonment.  Counts IX through XIII are brought by Bridget Gordon against the individual defendants for malicious prosecution.  Counts XIV through XVIII are brought by Bridget Gordon against Wilcox, Olphie, Sheriff Beary, the City of Ocoee, and the City of Winter Garden, alleging violations of 42 U.S.C. § 1983.  Counts XIX through XXVI are brought by Mitchell Gordon against all Defendants for loss of consortium.  Finally, Bridget Gordon brings Counts XVII and XVIII against Sheriff Beary for conversion and defamation.  Defendants removed the case to this Court on January 16, 2008, citing jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) for claims relating to issues of federal law and the deprivation of civil rights.  (Doc. No. 1 at 6.)

Various motions are currently before the Court.  Defendants Ronald Wilcox and Kevin Beary filed Motions on February 5, 2008 to dismiss Bridget Gordon's false arrest, section 1983, conversion, and defamation claims.  (Doc. Nos. 22-23.)  The following day, the Gordons filed a motion to remand the state law claims.[3]  (Doc. Nos. 25, 28.)  On February 11, 2008, the City of Winter Garden moved to dismiss Mitchell Gordon's loss of consortium claim.  (Doc. No. 33.)  On

---

[3]        The Gordons filed an Amended Motion the next day.  (Doc. No. 28.)

May 30, 2008, the Gordons filed a "partially unopposed" motion to file a Second Amended Complaint.[4]  (Doc. No. 56.)

**Standard of Review**

## I.     Remand of State Law Claims

As a general rule, 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, the statute allows courts to decline supplemental jurisdiction in instances where:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  If, after examining the factors listed in § 1367(c), the district court "decides that it has the discretion . . . to decline jurisdiction . . . , it should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience, in deciding whether or not to exercise that jurisdiction." *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994).

Additionally, under 28 U.S.C. § 1441(c), a district court has discretion to remand claims in a removed case that are "(1) separate and independent; (2) joined with a federal question; (3)

---

[4]        The Motion is opposed by Sheriff Beary to the extent it seeks to "clarify" Count XVIII and unopposed to the extent it seeks to add an additional count.

otherwise non-removable; and (4) a matter in which state law predominates." *Holtzman v. B/E Aero., Inc.*, NO. 07-80551-CIV-MARRA/JOHNSON, 2007 U.S. Dist. LEXIS 84318, at *5 (S.D. Fla. Nov. 14, 2007) (citing *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996)); *see also In re City of Mobile*, 75 F.3d 605, 607 (11th Cir. 1996) (explaining that the district courts may not remand properly-removed federal claims under sections 1367(c) and 1441(c)).

## II.      Motions to Dismiss

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from the complaint. *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. Fed. R. Civ. P. 12(d); *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

## Analysis

## I.      Motion to Remand

In their Motion to Remand, the Gordons do not actually argue why remand of the state law claims in this case would be appropriate. (*See* Doc. No. 28 at 1-5.) Instead, they summarize the holdings of several cases which declined to exercise supplemental jurisdiction over similar state law claims. (*Id.* at 3-5.) The Gordons primary rely on *Gosche v. Beary*, No. 6:04-cv-1245-22KRS, *slip*

*op.* at 2-3 (M.D. Fla. Sept. 24, 2004), in which Judge Conway of this District remanded claims for false arrest, malicious prosecution, and intentional infliction of emotional distress despite their joinder with a properly-removed section 1983 claim.  *Id.* at 4.  Judge Conway concluded that the state law claims "involve[d] elements of proof different" from the federal claim, trying the cases together posed a "substantial risk of jury confusion," and the state law claims predominated over the federal claims.  *Id.* at 3 (citing *James v. Sun Glass Hut of Cal., Inc.*, 799 F. Supp. 1083, 1084 (D. Colo. 1992)).  Although not expressly stated, the Gordons imply that the facts of this case are sufficiently similar to *Gosche* to warrant remand here.

Defendants contend that remand is inappropriate because none of the four scenarios referenced in 28 U.S.C. § 1367(c) are implicated by this case.  (Doc. No. 34 at 1-7; Doc. No. 38 at 2-6.)  Further, Defendants urge that expedience is best served by trying the federal and state claims together, and that the Gordons misplace their reliance on *Gosche*, a factually dissimilar case.  (Doc. No. 34 at 7-9; Doc. No. 38 at 6-10.)  The Court agrees.

A review of the Amended Complaint reveals that section 1367(c) is inapplicable to this case. First, the torts of false arrest, malicious prosecution, defamation, and conversion do not constitute "novel or complex issue[s] of State law."  All four of these torts are firmly rooted in the common law, fully explained by interpretive Florida case law, and routinely litigated in this Court.  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Generally, state tort claims are not considered novel or complex."); *Williams v. Sirmons*, --- F.Supp.2d ---, No. 3:06-cv-686-J-33MCR, 2008 WL 2222209, at *4 (M.D. Fla. May 27, 2008) (false arrest and malicious prosecution claims under Florida law); *PNC Bank, Nat'l Ass'n v. Colonial Bank, N.A.*, No. 8:08-cv-611-T-24MSS, 2008 WL 2917639, at *3 (M.D. Fla. July 28, 2008) (conversion claims

under Florida law); *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404, at *18 (M.D. Fla. July 8, 2008) (defamation claims under Florida law). .

Second, the state law claims do not "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). Although the state law claims are more numerous, the federal claims in this case are more than mere "appendage[s]." *See Parker*, 468 F.3d at 743. In fact, Bridget Gordon's section 1983 claims are based in part on violations of the Fourth Amendment (as incorporated by the Fourteenth Amendment) through "false arrest" and "malicious prosecution," theories which also underpin two of Gordon's state law claims.

Third, this Court has not dismissed Bridget Gordon's section 1983 claims. Further, the Gordons do not make any serious argument how this case constitutes an "exceptional circumstance[]" in which "compelling reasons for declining jurisdiction" exist.[5]

Although not raised as a ground for remand by the Gordons, section 28 U.S.C. § 1441(c) is similarly inapplicable to the facts of this case. The Eleventh Circuit has explained that "[w]here both federal and state causes of actions are asserted as a result of a single wrong based on a common

---

[5]        The Eleventh Circuit has stated that "[t]he [*United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)] factors of judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together are evaluated under section 1367(c)(4)." *Parker*, 468 F.3d at 746. Further, when determining whether "exceptional circumstances" exist, courts in other circuits consider such factors as: (1) whether a court with jurisdiction over the matter has already devoted considerable resources to the matter; (2) the convenience of the forum; (3) whether a federal or state rule of decision will apply to the bulk of the claims; (4) protection of the rights of the party advocating federal jurisdiction; and (5) avoidance of piecemeal litigation. 1 Fed. Proc., L. Ed. § 1:43 (2008). The Court finds that these considerations do not weigh in favor of remand. As stated above, the federal and state claims are sufficiently similar and involve enough common elements of proof that remand would unnecessarily consume further judicial resources. Likewise, it is fair for the Gordons to litigate their claims in federal court because they invoked the possibility of a federal forum by asserting claims under section 1983. Finally, there is no reason to believe that litigating in federal court is somehow inconvenient to either party, and the types of claims asserted in this case can reasonably be expected to be tried at once.

event or transaction, no separate and independent federal claim exists under section 1441(c)." *In re City of Mobile*, 75 F.3d at 608.  All of the claims in this case are based on Gordon's arrest, the search of her store, and her ensuing prosecution.  Thus, the state law claims are not "separate and independent" of her section 1983 claim.  *Id.*

Finally, the Gordons' heavy reliance on *Gosche* is misplaced.  As Defendants point out, regardless of whether remand was appropriate in *Gosche*, it is apparent that remand is inappropriate in this case.  The Gordons fail to analyze and apply the controlling statutes to the facts before the Court, and as explained above, the Court's own review of the relevant authority and pleadings presents no reason to remand the state law claims at this time.

## II.  Kevin Beary's Motion to Dismiss

Sheriff Beary moves for dismissal of Gordon's false arrest claim, section 1983 claim, defamation claim, and conversion claim.  Each of his arguments will be analyzed below.

### A.  False Arrest

Beary argues that Gordon's false arrest claim must be dismissed because the arrest was "made pursuant to a lawfully-issued arrest warrant supported by probable cause."  (Doc. No. 23 at 3.)  Beary attached the warrant to the Motion.  (Doc. No. 23-2 at 1.)  According to Beary, Florida law precludes liability for false arrest when the arresting officer acts according to a valid warrant.

Beary's argument fails at the outset.  As Gordon points out in her Response, this Court is not permitted to consider matters outside the Amended Complaint and its attached exhibits when ruling on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(d); *GSW, Inc.*, 999 F.2d at 1510.  The Amended Complaint alleges that the warrant was invalid and that no probable cause existed.  (Doc. No. 2 ¶ 27.)  For purposes of ruling on Beary's Motion to Dismiss,

the Court must assume that these allegations are true, and it cannot consider contrary evidence attached to Defendant's Motion.  Accordingly, Count I states a claim upon which relief can be granted.[6]

**B.      Section 1983**

Beary argues that Gordon's section 1983 claim must be dismissed for two reasons.  First, Beary argues that Gordon's arrest was made pursuant to a valid warrant, meaning that she cannot maintain a section 1983 claim based on her allegedly unlawful arrest.  (Doc. No. 23 at 8-10.) Second, Beary argues that Gordon was afforded adequate "post-deprivation" remedies for the return of items seized during the search of her store; therefore, her section 1983 claim fails to the extent it concerns the seizure of her property.  (*Id.* at 10-12.)

**1.      Gordon's Allegations Concerning the Validity of the Warrant**

As to the first reason for dismissal, Beary contends that the burden rests on Gordon to make a "substantial preliminary showing with some offer of proof in order to attack the presumed validity of an affidavit for a search warrant."  (*Id.* at 9 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).)  Beary argues that Gordon fails to make the required showing under *Franks* because she merely alleges that certain statements in the affidavits presented to the magistrate were false and does not otherwise question the validity of the warrant.  (*Id.*)

A fundamental problem, however, is that *Franks* does not stand for the proposition for which it is cited.  The case concerned a criminal defendant's constitutional right to challenge the veracity

---

[6]      The Court makes no findings as to the legal correctness of Beary's arguments concerning the effect of a valid warrant on a claim for false arrest.  Moreover, nothing in this Order should be construed as preventing Beary (or any other Defendant) from raising this argument in a motion for summary judgment.

of a search warrant affidavit during a criminal prosecution. *Franks*, 438 U.S. at 155-56 ("[W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").  Nothing in the opinion suggests that the Supreme Court intended to establish pleading requirements for a section 1983 claim against a law enforcement officer or agency for an allegedly unlawful arrest, and Beary fails to cite to any authority that has extended *Franks* in this manner.[7]

Rather, to maintain a section 1983 claim for her allegedly unlawful arrest, Gordon must establish the violation of an underlying federal right as it has been defined by the controlling case law. *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979).  She has met this requirement by alleging facts sufficient to establish that she was arrested without a valid warrant or probable cause in violation of the Fourth Amendment.  *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) ("Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." (citing *Reed v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998))); *see also Kingsland v. Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) ("[F]alsifying facts to establish probable cause is patently unconstitutional and has been so long before [the plaintiff's] arrest in 1995.").

_____

[7]        In other words, Beary's argument ignores the procedural posture of *Franks*.  The case was an appeal from the Delaware Supreme Court and presented the issue of whether a state court's refusal to allow a criminal defendant to challenge the validity of a search warrant, specifically the veracity of statements in the supporting affidavits, amounted to a violation of the defendant's Fourth Amendment rights.  *See Franks*, 438 U.S. at 155-56, 164-72.  The Court's opinion establishes a constitutional minimum standard that state courts must follow in criminal prosecutions.  *Id.* at 171-72.

## 2.       Adequacy of Post-Deprivation Procedures

Sheriff Beary next argues that Gordon cannot maintain a section 1983 claim relating to the seizure of her property because the Amended Complaint does not state whether she utilized the appropriate post-deprivation procedures, in this case a petition in state court for the return of the seized property.  (Doc. No. 23 at 10.)  Gordon concedes that Sheriff Beary is correct in stating that due process claims must be preceded by an exhaustion of post-deprivation remedies, but she argues that her Fourth Amendment seizure claim is not subject to the rule.  (Doc. No. 48 at 13 (citing *Lindsey v. Storey*, 936 F.2d 554, 561 n.9 (11th Cir. 1991)).)

Gordon is correct.  The availability of a post-deprivation remedy does not defeat a plaintiff's claim that the seizure of her property itself violated the Fourth Amendment.  *Lindsey*, 936 F.2d at 561 n.9 ("The availability of a post-deprivation remedy, while negating any procedural due process claims, cannot defeat plaintiffs' claim that the seizure itself by defendant Storey was violative of the Fourth Amendment." (citing *Byrd v. Stewart*, 811 F.2d 554, 555 (11th Cir. 1987) and *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir. 1985) (en banc))).  Gordon contends that her property was seized without probable cause and retained even after criminal charges were dropped.  (Doc. No. 2 ¶ 32.)  Her allegations are sufficient to establish a violation of the Fourth Amendment.  *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007) ("If the inspection of Bruce's [p]remises was unlawful from its inception or in its execution, then nothing discovered in the ensuing search could have been used to support the required probable cause to arrest Bruce or seize the seven pallets of his property. Certainly, the continued retention of his property after conclusion of the appeal would be a constitutional violation as well." (citations omitted)).

C.    Conversion

Beary next argues that Gordon cannot maintain an action for conversion because it "is not the proper vehicle to compel the return of property seized in a criminal case." (Doc. No. 23 at 13.) Rather, Beary contends, Gordon should have sought return of the property in the court that had jurisdiction over her criminal prosecution. (*Id.* at 13-14.) Gordon responds that she is not seeking return of the items but rather monetary damages through a conversion action. (Doc. No. 48 at 15-16.)

Florida law generally precludes a property owner from maintaining a replevin action for the return of property seized as evidence in a criminal prosecution. *Pondella Hall for Hire, Inc. v. City of St. Cloud*, 837 So. 2d 510, 511-12 (Fla. 5th DCA 2003). Instead, the owner must seek return of the property in the court which authorized the initial seizure. *Id.* However, Beary fails to cite any authority which prevents the property owner from bringing a conversion action seeking money damages for the same property.[8] In fact, the Fifth District Court of Appeals decision in *Pondella Hall for Hire, Inc.* implies that such an action is available, provided that the plaintiff complies with applicable notice requirements. *See id.* at 512 (dismissing the plaintiff's replevin action for lack of jurisdiction, while dismissing its conversion action under the doctrine of sovereign immunity for lack of proper notice, a ground that would likely not be reached if the cause of action was

---

[8]    Several cases explain that a suit for conversion is "not necessary" or "required" given the ability to seek return of the property from the court of seizure. *E.g., Helmy v. Swigert*, 662 So. 2d 395, 396 (Fla. 5th DCA 1995) ("A separate civil action for replevin or conversion is not required."); *Strickland v. Thelman*, 665 So. 2d 284, 287 (Fla. 5th DCA 1995) ("A separate suit for replevin or conversion is not necessary.") However, the Court is unaware of any case stating that a suit for conversion is unavailable or improper.

unavailable).  Gordon has attached her notice letters to the Complaint.  (Doc. No. 2-2.)  Accordingly, Gordon may assert a conversion claim for the seized property.

### D.      Defamation

Beary asserts two grounds for dismissal of Gordon's defamation claim.  First, Beary argues that the claim is foreclosed by the absolute privilege from defamation suits enjoyed by Florida government officials.  (Doc. No. 23 at 15-18.)    Second, Beary argues that the Sheriff's office cannot be liable for the malicious or bad-faith actions of its employees under section 768.28(9)(a) of the Florida Statutes.  (*Id.* at 18-19.)  Gordon argues that the first ground for dismissal is not implicated by the facts alleged in the Amended Complaint, and she responds to the second ground by agreeing to strike language from the Amended Complaint that characterizes the allegedly-defamatory statements as being made with bad faith or malice.  (Doc. No. 48 at 16-19.)

The Court agrees that Florida's doctrine of absolute privilege bars the claims against Sheriff Beary.  Gordon's defamation claim is premised on two categories of statements: (1) statements to the pharmaceutical board that led to the suspension of Gordon's licence, and (2) statements made to the media.  (Doc. No. 2 ¶ 264.)    Florida law provides government officials with an "absolute privilege [that] protects the statements of all public officials, regardless of the branch of government or the level of the official."  *Casell v. India*, 964 So. 2d 190, 194 (Fla. 4th DCA 2007).  The privilege applies so long as the official acts within his or her official duties.  *Id.*  The Florida Supreme Court has determined that an official's duties encompass all actions which he or she is authorized to perform, not just actions affirmatively required by statute.  *Stephens v. Geoghegan*, 702 So. 2d 517, 523 (Fla. 2d DCA 1997) (citing *City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981)).  For example, and particularly relevant to this case, at least one Florida appellate court

has held that a law enforcement officer's statements to the media are protected by absolute privilege because officers "routinely brief the media on matters of public concern . . . ." *Id.*

Gordon makes several unconvincing attempts to avoid the privilege. First, Gordon claims that "Defendant Sheriff made defamatory statements after the charges were dropped, which would not be within the scope of Defendant Sheriff's duties." (Doc. No. 48 at 17.) However, Gordon does not provide any legal support for this argument. (*Id.*) Although the prosecutor decided to drop the pending charges against Gordon in October of 2004, that fact alone does not mean that Sheriff Beary or his employees acted outside the scope of their duties by continuing to take interest in the matter. An official's range of duties is to be construed broadly and includes discretionary functions associated with a position. *Stephens*, 702 So. 2d at 523. Gordon has not pointed to any statute, rule, or policy that prevents law enforcement officials from remaining involved in matters where the state has ceased prosecution. In light of the relevant case law, the Court concludes that such activities still fall within a Florida law enforcement officer's duties.

Second, Gordon urges that *Casell* and *Stephens* are distinguishable because she "does not allege that the defamatory statements were committed in the scope of Defendant Sheriff's duties." (Doc. No. 48 at 17.) However, nothing in *Casell* and *Stephens*, or any other case dealing with the privilege, suggests that the privilege is only implicated when the plaintiff expressly alleges that statements were made in the course of an official's duties. Given that this allegation would almost certainly cause the privilege to apply, it is unlikely that a rational litigant would choose to include this language in her complaint. Rather, the more sensible approach is that the plaintiff's choice of a label is not dispositive, and the privilege applies when the facts alleged in the complaint

demonstrate that the affirmative defense precludes relief.  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1023 (11th Cir. 2001).

Finally, Gordon makes two related arguments concerning the procedural posture of this case. First, she notes that affirmative defenses such as privilege cannot succeed unless the defense appears on the face of the complaint.  (Doc. No. 48 at 18.)  Here, she argues, the "absolute privilege does not appear on the face of Plaintiff's Amended Complaint, and there are many facts important to the determination of whether Defendant Sheriff's actions were within the scope of his duties."  (*Id.*) Similarly, Gordon contends that Beary carries the burden of proof for his affirmative defense, and the facts in the Amended Complaint do not allow him to meet this burden at the motion to dismiss stage.  (*Id.*)

These arguments are unpersuasive.  At the threshold, it should be noted that the affirmative defense of "absolute privilege" is often applied early in the litigation, including at the motion to dismiss stage.[9]   The policy behind an absolute privilege is to insulate the speaker from liability based  on his or her  identity, a fact that often appears on the face of the complaint.  *See, e.g.,*

---

[9]     The introductory comments to Chapter 25, topic 2, title B of the Restatement (Second) of Torts explain that, "In reality these 'absolute privileges' are properly to be classified as immunities, since they are based upon the personal position or status of the actor."  Thus:

> These 'absolute privileges' are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position.

Restatement (Second) of Torts, ch. 24, topic 2, title B, introductory cmt at 243. (1977) *quoted in Cassell*, 964 So. 2d at 193.

*Hauser*, 231 So. 2d at 7-8 (approving of the trial court's dismissal on grounds of absolute privilege where statements fell within the scope of a municipal officer's duties); *Crowder v. Barbati*, No. 4D08-1495, 2008 Fla. App. LEXIS 10845, at *4-5 (Fla. 4th DCA July 16, 2008) (reversing the trial court's refusal to dismiss a defamation claim on grounds of absolute privilege where sheriff made statements about a case to the media); *Spano v. Hoffman*, 968 So. 2d 674, 674 (Fla. 4th DCA 2007) (affirming dismissal of a claim against Florida Bar officials because "because the complaint alleged that these two defendants were employees of The Florida Bar").

The Amended Complaint alleges that the Sheriff's office is liable for defamation because: (1) "False and misleading information was sent[10] that resulted in the suspension of Plaintiff's pharmacy licence from February 2004 through August 2006" and (2) "Defendant Wilcox and other members of the Task Force also made false statement to the media about Plaintiff." (Doc. No. 2 ¶ 264.)

To begin, the Florida appellate courts have already affirmatively answered the question of whether a law enforcement officer's briefing of the media falls within the scope of absolute privilege. *Stephens*, 702 So. 2d at 523. As to the other set of defamatory statements, the confluence of several Florida statutes strongly suggests that Florida law enforcement officers are authorized to report suspected criminal activity to the pharmacy board. Section 30.15(e) of the Florida Statutes invests Sheriffs with the duty of being "conservators of the peace in their counties." Section 893.04

---

[10]     Gordon's use of passive voice makes it difficult to ascertain *who* sent the information, but the fact that Gordon brings the claim against Sheriff Beary in his official capacity implies that an employee of the Sheriff's office was responsible. Further, the Court presumes that the information was sent *to* the pharmacy board or a related agency because it would be redundant for Gordon to twice allege that Beary's officers made defamatory statements to the media.

of the Florida Statutes permits a pharmacist to prescribe controlled substances[11] only upon "written or oral prescription of a practitioner," and section 465.016 subjects a pharmacist to disciplinary action for violating chapter 893 of the Florida Statutes.  Although no Florida statute affirmatively vested Sheriff Beary and his employees with the duty to report a suspected violation of Chapter 893 to the Pharmacy Board, the courts have cautioned about the need to liberally construe a government officer's absolute immunity.  *See Casell*, 964 So. 2d at 194.  Here, the Sheriff's general duty to conserve the peace, coupled with strong public policy against the unlawful distribution of controlled substances, leads to the conclusion that the Sheriff department employee who allegedly reported Gordon to the pharmacy board acted within the scope of his or her duty.  Accordingly, Gordon's defamation claim against Beary in his official capacity must be dismissed with prejudice.[12]

## III.   Ronald Wilcox's Motion to Dismiss

Defendant Ronald Wilcox moves to dismiss Gordon's false arrest and section 1983 claims against him.  All but one of the arguments he makes in support are identical those made by Defendant Kevin Beary, and the Court rejects them for the reasons explained above.  However,

---

[11]      Hydrocodone is listed as a "Schedule II" controlled substance under Florida law due to its high potential for dependence.  Fla. Stat. § 893.03(2)(a)(1)(j), *amended by* 2008 Fla. Sess. Law Serv. Ch. 2008-88 (West).

[12]      Dismissal on grounds of absolute immunity or privilege is usually with prejudice because the nature of the immunity rests on the defendant's identity.  *See, e.g.*, *Baxter v. Washington*, 201 F. App'x 656, 658 (11th Cir. 2006).  Further, amendment of Gordon's defamation claim against Beary would be futile in this case.  *Alexander v. Fla. Bar*, 265 F. App'x. 884, 885-86 (11th Cir. 2008) (leave to amend is unnecessary where amendment of the claim would be futile).  By alleging that the defamatory statements were made outside of the responsible employee's official duties, Gordon would bring her claim squarely within the scope of section 768.28(9)(a) of the Florida Statutes which protects government agencies from liability for an employee's actions taken outside the scope of his or her employment.  However, subject to Federal Rule of Civil Procedure 11, Gordon may bring a defamation action against Beary or any other responsible official in his or her individual capacity, provided that her claims comport with section 768.28 and other applicable law.

Wilcox makes one additional argument related to his status as a defendant named in his individual capacity.

Section 1983 claims against government actors in their individual capacities are subject to a heightened pleading standard. *Swann v. So. Health Partners, Inc.*, 388 F.3d 834, 837-38 (11th Cir. 2004) (citing *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)). The rationale behind this requirement is to provide the Court and individual defendants, such as Wilcox, with sufficient information in the complaint to determine whether qualified immunity applies. *Id.*

In cases where the standard applies, "the complaint must allege the relevant facts with some specificity." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (internal quotation marks omitted) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998)). Further, "[M]ore than mere conclusory notice pleading is required . . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Id.* (internal quotation marks omitted; alterations in original) (quoting *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)). In reviewing a motion to dismiss, the court "need only accept well-pleaded facts and reasonable inferences drawn from those facts." *Id.* (quoting *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)) (internal quotation marks omitted).

There is no dispute whether the standard applies to Gordon's claims against Wilcox. Rather, the dispute is whether Gordon meets the standard. According to Wilcox, Gordon merely alleges that Wilcox "had no legal right to detain or arrest plaintiff," made "false statements" to secure the warrant, and "exceed[ed] the scope of the warrant." (Doc. No. 22 at 9.) Wilcox contends that Gordon fails "to allege specific facts in support of these legal conclusions." (*Id.*) More specifically, Wilcox claims that the Amended Complaint does not inform him what specific actions exceeded the

scope of the valid search warrant, and there are no factual allegations "that indicate which statements are alleged to be false."   (*Id.*)

Wilcox's representations about the Amended Complaint are inaccurate.  The Amended Complaint explains that Wilcox had no probable cause to arrest Gordon because he manufactured probable cause by falsely identifying the voice on a recording as Gordon's.  (Doc. No. 2 ¶ 26.)  The Amended Complaint specifies that Wilcox made a false statement by swearing that this voice belonged to Gordon when he had no basis for making the assertion.  (*Id.*)  And finally, the Amended Complaint explains that Wilcox exceeded the scope of the warrant by seizing unrelated merchandise and Gordon's personal property during the search.  (*Id.* ¶ 32.)  On the whole, the Amended Complaint provides sufficient factual detail to allow Wilcox to formulate a qualified immunity defense, if he so desires.  Accordingly, Gordon has satisfied the heightened pleading standard.

## IV.   **Winter Garden's Motion to Dismiss**

Defendant City of Winter Garden moves to dismiss Mitchell Gordon's loss of consortium claim against it.  Under Florida law, a plaintiff suing a governmental entity must first provide the entity with notice of all claims against it.  Fla. Stat. § 768.28(6)(a).  The City argues that Mitchell Gordon failed to provide sufficient notice of his claim against because his notice letter merely stated the following:

> Claimant, Mitch Gordon is filing a claim against the above referenced entities concerning the incidents that occurred relating to his wife Bridget Gordon on or around January 14, 2004 and or around June of 2004, in Orange County, Florida of mental and emotion distress.   Mr. Gordon's claim will be asking for all compensatory damages, including special damages and punitive damages.

(Doc. No. 33 at 2.)  The letter was addressed to "Jack L. Quesinberry, Mayor" and "George A. Brennan, Chief of Police."  (Doc. No. 33-2 at 1.)  The City argues that the letter is ambiguous as to

the entity against which Gordon is making a claim because Gordon's counsel addressed the letter to the chief of police and "the courts . . . have long determined that Police Departments are not legal entities capable of . . . being sued." (Doc. No. 33 at 2.) In addition, the City argues that the notice is ambiguous as to "exactly what is the claim being presented." (*Id.* at 3.) Both of these contentions are unsound.

First, it is difficult to understand how the inclusion of Chief Brennan as a recipient of the letter somehow made it less clear to the City that Mitchell Gordon intended to sue it. The letter explained that Mitchell Gordon intended to file claims against "the above referenced entities," a category of two which included the City.[13] Moreover, even if the inclusion of the police department in the notice letter somehow proved confusing to the City's attorneys, the fact that "Police Departments are not legal entities capable of . . . being sued" should have been an alert that the City was the entity against which Mitchell Gordon would actually file his claim.

Second, the requirement of presenting a claim does not mean the claimant must present his future legal theories. The notice statute does not specify the information that must be included in the notice of claim. *Smart v. Monge*, 667 So. 2d 957, 959 (Fla. 2d DCA 1996). In light of this silence, courts have concluded that "at a minimum, the written notification must contain language notifying the agency of a claim; that is, a demand for compensation for an injury." *Id.* (finding that a demand letter was insufficient where the letter mentioned an incident but only requested documents and did not discuss whether a claim would be filed). Further, the notice must be specific enough to allow the agency to investigate the occurrence. *LaRiviere v. S. Broward Hosp. Dist.*, 889

---

[13]     The statute does not specify which entities must or must not be included in a notice of claim. *See* Fla. Stat. § 768.28(6).

So. 2d 972, 974 (Fla. 4th DCA 2004).  For instance, Florida's Second District Court of Appeal found

the following notice sufficient:

> Re: Claimant: Brower, Edward I.
> Re: Date of Incident: 03/25/91
> Re: Your insured: Department of Natural Resources
> Re: Your file No. GO3-91-101-TJ
> Dear Mr. Jertberg:
>
> Per your request, this will confirm that this office is representing Edward Brower with respect to the captioned claim/incident.
>
> Accordingly, this letter will serve to supplement prior oral/written notice to you and your insured, Department of Natural Resources, as to the occrrence (sic) of Mr. Bower's (sic) injuries and his claim therefor.

*Brower v. State Dept. of Natural Res.*, 698 So. 2d 568, 570-71 (Fla. 2d DCA 1997) (notations of

error in the original).

Similarly, Mitchell Gordon's notice is sufficient because it makes a reasonably specific

demand against the city for compensation.  The letter states that Mitchell Gordon will file a claim

against the City and explains the event upon which his claim is based.  (Doc. No. 33-2 at 1.)  This

is enough information to put the City on notice and to allow it to investigate the matter.  Because

the letter meets these basic requirements, its failure to list a cause of action and its mention of

punitive damages, which cannot be recovered in a loss of consortium claim, are simply not germane.

As the Second District Court of Appeal stated, the letter is "not a model of how to give notice of a

claim to a state agency," but it meets the minimum requirements of the notice statute.  *Brower*, 698

So. 2d at 570.

## V.    Plaintiffs' Motion for Leave to File a Second Amended Complaint

Plaintiffs seeks leave to add an additional count and to clarify Bridget Gordon's claim

against Sheriff Beary for defamation.  (Doc. No. 56.)  The first request is unopposed; the second

request was opposed by Beary at the time of filing because the Court had not yet ruled on his Motion to Dismiss.   (*Id.* at 2.)  Since the Court has ruled on Beary's Motion, his grounds for objection are now moot.  Accordingly, Plaintiffs' request for leave to amend will be granted as explained below.

## Conclusion

Based on the foregoing:

1. The Motion of Defendant, Kevin Beary, to Dismiss Count I, Count VI, Count XIX, Count XXVII, and Count XXVIII of Plaintiffs' Amended Complaint or, in the Alternative, Motion for a More Definite Statement (Doc. No. 23, filed Feb. 5, 2008) is **GRANTED in part** and **DENIED in part**.  Count XXVIII is **DISMISSED with prejudice**.  The Motion is denied in all other respects.

2. The Partially Unopposed Motion for Leave to File Second Amended Complaint and Demand for Jury Trial (Doc. No. 56, filed May 30, 2008) is **GRANTED**, except that such Complaint should not contain a defamation claim against Kevin Beary in his official capacity.

3. The Motion of Defendant, Ronald Wilcox, to Dismiss Count IV and Count XIV of Plaintiffs' Amended Complaint or, in the Alternative, Motion for a More Definite Statement (Doc. No. 22, filed Feb. 5, 2008) is **DENIED**.

4. The Amended Motion of Plaintiffs to Remand to State Court (Doc. No. 28, filed Feb. 7, 2008) is **DENIED**.

5. The Motion of Defendant, City of Winter Garden, to Dismiss Count XXI of Plaintiffs' Amended Complaint and Memorandum of Law (Doc. No. 33, filed Feb. 11, 2008) is **DENIED**.

6.      Plaintiff has **ten (10) days** from the date of this Order to file a Second Amended Complaint

in accordance with this Order.  If Plaintiff chooses not to amend, the action will proceed on

the Amended Complaint (Doc. No. 2) currently before the Court, except as stated in this

Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 6, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record